IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLO GUGLIELMINO et al,                     No   C-05-0620 VRW

    Plaintiffs,                                     ORDER

    v

MCKEE FOODS CORP,

    Defendant.
_____/

This putative class action is "brought on behalf of all persons and entities who entered into 'Distributorship Agreements' with [d]efendant McKee Foods Corporation * * *, and functioned as drivers/distributors of McKee Foods's products to retail stores." Notice Remov (Doc #1) Ex B (Complaint) ¶1. Plaintiffs allege violations of various wage and hour laws based on defendant's treatment of them as independent contractors rather than employees. "Plaintiffs' function was, and is, primarily to arrange merchandise, rotate stock, place point-of-sale and other advertising materials, and engage in other activities intended to promote sales by the supermarkets of the goods they have

1  delivered." Id ¶22.

2      Defendant removed the case from the superior court of
3  Alameda to this court on February 10, 2005, on the basis of
4  diversity of citizenship. Notice Remov (Doc #1). The papers
5  before the court establish that plaintiffs are citizens of
6  California, see id ¶11(a); id Ex B (Complaint) ¶5, and that
7  defendant is a Tennessee corporation with its principal place of
8  business in Tennessee, and hence a citizen of Tennessee, see Notice
9  Remov (Doc #1) ¶11(b); id Ex B (Complaint) ¶7. Although there is
10 no question as to diversity of citizenship, the parties hotly
11 contest whether the $75,000 minimum amount-in-controversy
12 requirement of 28 USC § 1332 is met.

13     Plaintiffs contend that the amount-in-controversy
14 threshold of § 1332 is not met and thus remand is required pursuant
15 to 8 USC § 1447(c). Mot Remand (Doc #9). Defendant opposes,
16 attempting to demonstrate that, if they are successful, plaintiffs'
17 damages will each exceed $75,000. Def Opp (Doc #20). The court
18 finds this matter suitable for determination without oral argument,
19 and, accordingly, the hearing scheduled for May 5, 2005, is
20 VACATED. See Civ L R 7-1(b). For the reasons that follow, the
21 court DENIES the motion to remand and CERTIFIES this order for
22 interlocutory review pursuant to 28 USC § 1292(b).

23

24     I

25     The first -- and perhaps most difficult -- question is
26 what is (and who bears) the burden of proof in demonstrating that
27 the amount-in-controversy requirement is (or is not) met here.
28 Plaintiffs' complaint states that the "damages to each [p]laintiff

are less than $75,000" and "the sum of such damages and the value of the injunctive relief sought by plaintiff in this action is less than $75,000."  Notice Remov (Doc #1) Ex B (Complaint) ¶4.

In all the authorities the court has consulted, one thing is constant:  Defendant, as the party invoking the court's jurisdiction, bears the burden of showing that removal is proper. See, e g, William W Schwarzer, A Wallace Tashima, James M Wagstaffe, Federal Civil Procedure Before Trial ¶2:1093 (Rutter Group, 2005) ("Plaintiff's motion for remand effectively forces defendant -- the party who invoked the federal court's removal jurisdiction -- to prove by a preponderance of the evidence whatever is necessary to support the petition: e g, the existence of diversity, the amount in controversy, or the federal nature of the claim." (citing Gaus v Miles, Inc, 980 F2d 564, 566 (9th Cir 1992)).

There are (at least) three possibilities for the removing defendant's burden of proof; they are compactly identified in the Eleventh Circuit's opinion in Burns v Windsor Insurance Co, 31 F3d 1092, 1094 (11th Cir 1994):

> In the typical diversity case, plaintiff files suit in federal court against a diverse party for damages exceeding [the then-prevailing jurisdictional amount of] $50,000. Such a case will not be dismissed unless it appears to a "legal certainty" that plaintiff's claim is actually for less than the jurisdictional amount. St Paul's Indemnity Corp v Red Cab Co, 303 US 283, 288-89 (1938). In the typical removal case, a plaintiff files suit in state court seeking over $50,000.  The defendant can remove to federal court if he can show, by a preponderance of the evidence, facts supporting jurisdiction.  See McNutt v General Motors Acceptance Corp, 298 US 178, 189 (1936). These standards give great weight to plaintiff's assessment of the value of

3

>plaintiff's case.
>
>Neither of these general rules fits our atypical case. Here, plaintiff filed suit in state court specifically requesting $45,000, five thousand dollars less than the jurisdictional amount. Defendant says plaintiff's prayer is illusory, that she actually intends to recover more than $50,000; so, the case should remain in federal court.

<u>Burns</u> goes on to opt for a third, "heavy" burden of proof: When "plaintiff asserts in her <u>ad damnum</u> clause a specific claim for less than the jurisdictional amount, defendant, to establish removal jurisdiction, [must] prove <u>to a legal certainty</u> that plaintiff, if she prevailed, would not recover [less than the jurisdictional amount]." Id at 1097 (emphasis added).

To summarize the three possible standards: Defendant might be required to show that plaintiff (1) <u>might</u> recover in excess of the jurisdictional amount; (2) is <u>more likely than not</u> to recover in excess of the jurisdictional amount; or (3) is <u>legally certain</u> to recover in excess of the jurisdictional amount. (All of these standards, of course, assume that plaintiff prevails on all his claims for relief.) The first option does not appear to have been adopted by any court. Moreover, it cannot be reconciled with the Ninth Circuit's consistent holding that the preponderance standard applies when a defendant seeks to remove a case in which the complaint <u>itself</u> supports the defendant's position by seeking more than the jurisdictional amount. See, e g, <u>Sanchez v Monumental Life Insurance Co</u>, 102 F3d 398, 403-04 (9th Cir 1996); <u>Valdez v Allstate Insurance Co</u>, 372 F3d 1115 (9th Cir 2004).

As between the "preponderance" and "legal certainty" tests, however, the Ninth Circuit has not offered strong guidance.

4

As noted above, the Eleventh Circuit adopted the "legal certainty" test in <u>Burns</u>, but the most the Ninth Circuit has said is that "[w]here it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." <u>Matheson v Progressive Specialty Insurance Co</u>, 319 F3d 1089, 1090 (9th Cir 2003) (per curiam). By its literal language, this quotation from <u>Matheson</u> would seem controlling here. Reliance on <u>Matheson</u> does not suffice, however, because <u>Matheson</u> (like <u>Sanchez</u>, which it cites, and <u>Valdez</u> as well) addressed a situation in which the state-court complaint was silent on damages. Here -- as in <u>Burns</u> and in contrast to the Ninth Circuit cases of <u>Matheson</u>, <u>Sanchez</u> and <u>Valdez</u> -- the complaint is not silent, but affirmatively seeks <u>less</u> than the jurisdictional amount.

Even the analogy to <u>Burns</u> is imperfect because the <u>Burns</u> plaintiff sought a <u>specific</u> amount of damages that was less than the jurisdictional amount; the complaint here simply maintains -- almost too conveniently -- that plaintiffs' damages "are less than $75,000." The heightened standard adopted in <u>Burns</u> grew out of the idea that a "plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth[;] * * * plaintiff's counsel best knows the value of his client's case * * *." 31 F3d at 1095. Plaintiffs' disclaimer here of the jurisdictional amount is not so obviously the product of counsel's specific assessment of his clients' case, undermining somewhat the reason for the rule in <u>Burns</u>.

The imperfect analogy to <u>Burns</u> and the categorical

5

language of <u>Matheson</u> convince the court that it should proceed on the preponderance standard. Nonetheless, the question is sufficiently close -- and, as will be seen below, determinative -- that the court will certify this order for interlocutory appeal pursuant to 28 USC § 1292(b).

## II

Having established the burden of proof, the court applies it to plaintiffs' complaint. Because plaintiffs propose to proceed as representatives of a class, all that matters is that they -- and not (necessarily) the unnamed class members -- satisfy § 1332's amount-in controversy requirement. See <u>Gibson v Chrysler Corp</u>, 261 F3d 927, 940 (9th Cir 2001) ("[T]here is supplemental jurisdiction over the claims of unnamed class members when the claim of an individual named plaintiff satisfies the amount-in-controversy requirement."). (Precisely this question is, however, pending before the Supreme Court in <u>Exxon Corp v Allapattah Services</u>, No 04-70, and upon a decision from the Supreme Court, the parties should promptly address the effect of that decision on this case.) Accordingly, the court must evaluate the damages claimed by the two named plaintiffs, Briant Chun-Hoon ("Chun-Hoon") and Carlo Guglielmino ("Guglielmino").

The evidence that establishes the amount in controversy must be just that -- evidence. As the Ninth Circuit recently explained:

> "[a]lthough we have not addressed the types of evidence defendants may rely upon to satisfy the preponderance of the evidence test for jurisdiction, we have endorsed the Fifth Circuit's practice of considering facts

6

>
> presented in the removal petition as well as any 'summary-judgement-type [sic] evidence relevant to the amount in controversy at the time of removal.'" Matheson, 319 F3d at 1090, quoting Singer [v State Farm Mutual Automobile Insurance Co, 116 F3d 373, 377 (9th Cir 1997)]; see, e g, Cohn v Petsmart, Inc, 281 F3d 837, 840 (9th Cir 2002) (per curiam) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."); Singer, 116 F3d at 376-77 (holding that a judicial admission may establish the amount in controversy).

Valdez, 372 F3d at 1117 (first alteration in original). By contrast, "information and belief hardly constitutes proof by a preponderance of the evidence." 372 F3d at 1117 (quotation marks omitted).

Plaintiffs' economic damages consist of (1) out-of-pocket expenses for vehicles, warehouse leasing and "unsaleable" (i e, spoiled) product that they incurred by virtue of being treated as independent contractors; (2) overtime compensation; and (3) employee benefits. Defendant's computation of these damage elements is found in the notice of removal and is entirely made on information and belief. Accordingly, it is entitled to no weight. The court therefore adopts plaintiffs' computations with respect to (1) out-of-pocket expenses and (2) overtime compensation. See Mot Remand (Doc #9) at 3-11. With respect to employee benefits, the court has no probative evidence before it on the appropriate measure of health insurance, but does recognize a 1.5%-of-salary 401(k) plan matching contribution to which plaintiffs claim an entitlement. On this basis, the court finds that defendant has established by a preponderance of the evidence that Guglielmino's

/

economic damages are $35,590.07[1] and that Chun-Hoon's economic damages are $44,697.00.[2]

These sums do not satisfy the amount-in-controversy requirement. But plaintiffs also seek punitive damages and statutory attorneys' fees. With respect to the former, defendants have heeded the advice of other courts to "introduce evidence of jury verdicts in cases involving analogous facts." See, e g, <u>Surber v Reliance National Indemnity Co</u>, 110 F Supp 2d 1227, 1232 (N D Cal 2000). The jury verdict reports are attached as Exhibit A to defendant's opposition paper. These verdict reports suggest that punitive damage awards, after reduction by the court, are typically a small single-digit multiple of the economic damage award. (The reported awards, after reduction, were 3.4, 1.5 and 3.8 times the corresponding economic damage awards.) Plaintiffs poke a few holes in these reports -- there are factual distinctions and none represent punitive damage awards made in a class action -- but no comparison will ever be perfect. What matters here is that these cases share the employment fraud aspect of this case, the basis for plaintiffs' punitive damages claims. And while the case comparisons might have been better, plaintiffs have offered none of their own. As such, the court finds (again, conservatively) that if plaintiffs prevail on their punitive

---

[1] This is the sum of $11,914.82 in vehicle operating expenses; $8,178.64 in warehouse leasing costs; $6,679.03 in unsaleable product; $7,463.36 in overtime; and a 401(k) contribution computed in Mot Remand (Doc #9) 10 n5 as $1,354.22.

[2] This is the sum of $14,450 in vehicle operating expenses; $6,631 in warehouse leasing costs; $10,500 in unsaleable product; $11,115.52 in overtime; and a 401(k) contribution of 1.5% per year for four years of an annual gross profit of $33,341.25, or $2,000.48.

United States District Court
For the Northern District of California

damages claim, it is more likely than not that the punitive damage award will be at least as great as the economic damage award.  This alone puts Chun-Hoon over the jurisdictional threshold, and brings Guglielmino within $3,820 of the jurisdictional threshold.

As for attorneys' fees, defendant points out that the Ninth Circuit has established 25% as a "benchmark" award of fees. Def Opp (Doc #20) at 9 (citing <u>Fischel v Equitable Life Assurance Society</u>, 307 F3d 997, 1006 (9th Cir 2002)).  Of course, <u>Fischel</u> (and the 25% "benchmark") are creatures of the common fund class action, and plaintiffs here pray for attorneys' fees under a fee-shifting rule.  Nonetheless, conservatively estimating attorneys' fees by a percentage seems appropriate in this context, where any computation of the amount in controversy necessarily entails some educated speculation.  The court finds that it is more likely than not that if they prevail, plaintiffs will be entitled to fees on the order of 12.5% (half the 25% "benchmark") of their economic damages.

(Indeed, even a more conservative estimate for attorneys fees would put Guglielmino over the jurisdictional threshold:  If a $70,000 claim is typical of the roughly 200 class members that plaintiffs claim exist, then the class' claims will be worth about $14 million.  Yet a fee award of merely $800,000 -- in the court's experience, a small award in comparison to such a large class claim -- would add $4000 (1/200th of $800,000) to the amount in controversy attributable to Guglielmino.  And $4000 is enough to put his claim over the jurisdictional threshold.)

Accordingly, the court finds that the total amount in controversy -- conservatively estimated -- is the sum of (1)

9

economic damages, (2) attorneys' fees equal to 12.5% of economic damages and (3) punitive damages equal to economic damages, or, in total, 2.125 times economic damages.  Using the figures computed above for economic damages, this implies that the amount in controversy for Guglielmino is $75,628.90 and the amount in controversy for Chun-Hoon is $94,981.13.  Both amounts exceed $75,000.   Accordingly, the court finds that the requirements of 28 USC § 1332 are met and that it has subject matter jurisdiction.

### III

That said, the court is quick to note that its result would be the opposite if it employed the "legal certainty" test. While its computation of economic damages would be no different -- their certainty derives from being grounded in matters of objective fact -- there is no legal certainty at all that attorneys' fees or punitive damages would, if awarded, amount to any particular amount at all.  Put another way, plaintiffs' overtime claims can be reduced to a sum certain, but their attorneys might expend only modest effort to prevail (and that effort would be spread over a whole class) and a jury might award only $1 in punitive damages. Under the "legal certainty" test, the court cannot say that plaintiffs will recover <u>any</u> particular amount of attorneys fees or punitive damages.  As such, the amount in controversy under the "legal certainty" test is only plaintiffs' economic damages, and the court has found that these do not meet the amount-in-controversy requirement of 28 USC § 1332.  Thus, this order ultimately turns on the burden of proof the court has adopted.

Title 28 USC § 1292(b) provides that:

10

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

The requirements of this section are met here. An order denying a motion to remand is a non-appealable interlocutory order. See, e g, Melancon v Texaco, Inc, 659 F2d 551, 552-53 (5th Cir 1981). As noted, although this order rests in part on factual determinations, a question of law is ultimately dispositive. There are substantial grounds for difference of opinion on this question; the Eleventh Circuit makes convincing argument in Matheson for a "legal certainty" burden, but Ninth Circuit precedent seems to suggest that the traditional preponderance standard should apply. Finally, resolution of this question will substantially advance the termination of this litigation in that reversal of this order will cause the case to exit the federal system. The court is particularly mindful of the substantial resources that must be committed to reach an appeal after final judgment of a jurisdictional issue presented on a threshold motion to remand -- and the risk that all will be for nought if that initial jurisdictional determination is reversed on appeal.

Accordingly, this court CERTIFIES this order for interlocutory appeal pursuant to 28 USC § 1292(b). The order presents the following question for appeal: What is defendants' burden of proof when plaintiffs move to remand pursuant to 28 USC § 1447(c) and their state-court complaint specifies that their damages are less than the jurisdictional requirement? An

interlocutory appeal shall not stay proceedings in this case.

IV

In sum, the court DENIES plaintiffs' motion to remand (Doc #9) and CERTIFIES this order for interlocutory appeal pursuant to 28 USC § 1292(b). The parties are scheduled to appear for an initial case management conference on June 14, 2005, at 9:00 am.

IT IS SO ORDERED.

**VAUGHN R WALKER**

United States District Chief Judge