IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANT CHUN-HOON, et al, | No   C-05-620 VRW |
| Plaintiffs, | ORDER |
| v | |
| MCKEE FOODS CORPORATION, et al, | |
| Defendants. | |

This putative class action is brought "on behalf of all persons and entities who entered into 'Distributorship Agreements' with defendant McKee Foods Corporation * * *, and functioned as drivers/distributors of McKee Foods's products to retail stores." Notice Remov (Doc #1) Ex B (Complaint) ¶1.  Plaintiffs allege violations of various wage and hour laws based on defendant's treatment of them as independent contractors rather than employees.

Defendant removed the case from the superior court of Alameda to this court on February 10, 2005, on the basis of diversity of citizenship.  Notice Remov (Doc #1).

//

Defendant now moves pursuant to Civ L R 7-9 for reconsideration of the court's June 6, 2006, order provisionally certifying a damages class under FRCP 23(b)(3). Doc #66. For the reasons that follow, the court DENIES defendant's motion for reconsideration, but elaborates on its June 6, 2006, order.

I

A

Plaintiffs' proposed class consists of all residents of California who entered into independent distributor agreements with defendant since January 2001. Cert Mot (Doc #42) at 3. FRCP 23(a) sets forth the preliminary requirements to certifying a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class and (4) the representative parties must be able fairly and adequately to protect the interests of the class. FRCP 23(a); see also, e g, Armstrong v Davis, 275 F3d 849, 868 (9th Cir 2001); Walters v Reno, 145 F3d 1032, 1045 (9th Cir 1998).

In addition to satisfying the Rule 23(a) prerequisites, the class must also satisfy one of the three alternatives listed under Rule 23(b). Walters, 145 F3d at 1045. Plaintiffs bear the burden of demonstrating that they have satisfied all four FRCP 23(a) elements and one FRCP 23(b) alternative. Zinser v Accufix Research Institute, Inc, 253 F3d 1180, 1186 (9th Cir 2001). Failure to carry the burden on any FRCP 23 requirement precludes certifying a class action. Burkhalter Travel Agency v MacFarms

**Int'l, Inc**, 141 FRD 144, 152 (ND Cal 1991) (Jensen, J) (citing **Rutledge v Electric Hose & Rubber Co**, 511 F2d 668 (9th Cir 1975)).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  **Eisen v Carlisle & Jacquelin**, 417 US 156, 178 (1974) (quoting **Miller v Mackey Intl**, 452 F 2d 424 (5th Cir 1971)) (internal quotation marks omitted). Nonetheless, the court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case."  **Hanon v Dataproducts Corp**, 976 F 2d 497, 509 (9th Cir 1992).  On a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true."  **Blackie v Barrack**, 524 F2d 891, 901 n17 (9th Cir 1975).

Defendant's motion for reconsideration concerns FRCP 23(b)(3), which authorizes the court to certify a class action if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  FRCP 23(b)(3).  See also **Zinser**, 253 F3d at 1189.

In its motion for reconsideration, defendant contends the court failed to analyze the elements of plaintiffs' proof and defendant's defenses in determining whether common issues predominated over individual ones.  Specifically, defendant asserts that the standard form agreement and informational booklets upon which the court relied in certifying a class are insufficient as a

3

1 matter of law to establish a predominance of common issues.
2 Although the court's order only addressed these issues briefly,
3 further analysis does not change the order's outcome.

B

Under Rule 23(b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FRCP 23(b)(3). The matters pertinent to such a finding include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. Id.

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. See FRCP 23(b)(3) advisory committee notes. When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. Id.

The court agrees with plaintiffs that common questions of law and fact predominate. "Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved." Romero v

<u>Producers Dairy Foods, Inc</u>, 235 FRD 474, 489 (ED Cal 2006). Here, the common questions concern whether defendant misclassified its distributors as independent contractors instead of employees, and these questions predominate over individual ones.  Compare <u>Breedlove v Tele-Trip Co</u>, 1993 US Dist LEXIS 10278, 11-12 (ND Ill 1993) (in a putative ERISA class action, a court should try to determine employment status on a categorical basis if possible).

Under California law, the "principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired * * *."  <u>S G Borello & Sons, Inc v Dept of Industrial Relations</u>, 48 Cal 3d 341, 350 (1989) (quoting <u>Tieburg v Unemployment Insurance Appeals Board</u>, 471 P 2d 975, 2 Cal 3d 943, 946 (1970)) (internal quotation marks omitted).  Courts have also recognized "several 'indicia' of the nature of a service relationship" including whether an employer has "the right to discharge at will, without cause."  Id at 350-51.  Other secondary factors, derived principally from the Restatement Second of Agency, include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

Id. "Generally, * * * the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." Id (quoting <u>Germann v Workers' Comp Appeals Bd</u>, 176 Cal Rptr 868, 123 Cal App 3d 776, 783 n5 (1981)) (internal quotation marks omitted) (omission in original).

In view of the factors specified in <u>Borello</u>, plaintiffs have satisfied their burden for certification. Indeed, many common questions arise from defendant's own efforts to standardize its relationship with distributors. First, putative class members must sign a distribution agreement, upon which plaintiffs now sue. Boyd Dep (Doc #44, Ex A) 136:21-139:2); Doc #44, Exs G and I). Second, defendant promotes uniformity through instruction booklets. One booklet, titled <u>Doing Business with McKee</u>, "provide[s distributors] with information on various aspects of [their] dealings with McKee Foods." Doc #44, Ex D. This 35-page booklet directs distributors in several critical respects. See, e g, id at 10 (listing instructions regarding relationships with independent distributor warehouses); id at 6 (noting methods for receiving deliveries); id at 11-13 (naming considerations for choosing a warehouse location); id at 18 (providing distributor payment procedures); id at 29 (noting procedures for a complaint response plan). Another booklet, titled <u>Marketing Suggestions</u>, sets forth various marketing strategies that distributors should follow. E g, id, Ex E at 17 ("We suggest that you try to maintain special displays at all times.").

Defendant also provides detailed instructions to their District Sales Representatives (DSR) in order to standardize new

6

1  distributor orientations.  See, e g, ("Even after the initial
2  orientation has ended, it is important that you [the DSR] are
3  available in case questions arise.").  Doc #44, Ex #I at 12.  These
4  instructions direct a DSR to contact regularly the new "independent
5  distributor" by phone or in person "on a weekly basis."  Id.
6         Further, plaintiffs offer deposition testimony
7  establishing other uniform policies toward distributors.  Such
8  policies include: common standards for a distributor's warehouse
9  space (Doc #44, Ex B at 25:8-25); established order and delivery
10 dates (Id at 81:2-3); procedures for a DSR or regional manager
11 periodically to ride along with drivers to monitor service (Doc
12 #44, Ex A at 107:5-109:16) and requirements that the defendant be
13 named as insured under the vehicle and liability insurance of its
14 distributors.  Doc #44, Ex B at 102:4-7; Doc #44 Ex A at 72:22-
15 73:4.  In sum, the agreements, booklets and deposition statements
16 evince a significant level of uniform training and supervision,
17 which constitutes a common issue pertinent to the litigation.
18         In addition to the actual practices, other common issues
19 arise from plaintiffs' underlying claims.  In determining whether
20 to classify the distributors as independent contractors or
21 employees, common issues, as alleged in the complaint, include the
22 following:  (1) all distributors were classified as independent
23 contractors; (2) none of the distributors was awarded overtime pay;
24 and (3) all the distributors were forced to absorb overhead costs.
25         Defendant insists that the "suggestions" in the above
26 mentioned booklets do not amount to supervision and that not all
27 distributors, including named plaintiffs, received the booklets.
28 Doc #66 at 20.  Although the actual practice of class members may

**7**

undercut the pertinence of formal policies, defendant's anecdotes do not suffice.  Occasional instances of noncompliance do not override defendant's purpose for distributing the booklets:  to standardize its arrangement with plaintiffs.

Moreover, at this early stage of the litigation, the court must only "determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence.  Wang, 231 FRD at 605; see Staton, et al v Boeing Company, 327 F3d 938, 954 (9th Cir 2003).  That each class member might be "required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action," and "individual issues do not render class certification inappropriate so long as such issues may effectively be managed."  Sav-On Drug Stores, Inc v Superior Court, 34 Cal 4th 319, 334. (Cal. 2004).

A recently-decided case, Tierno v Rite Aid Corp, 2006 US Dist LEXIS 71794, No 05-02520 (ND Cal Aug 31, 2006), lends support to the court's ruling on Rule 23(b)(3).  In Tierno, a group of Rite Aid store managers claimed their classification as exempt employees violates California labor laws, and moved for class certification.  Id.  The court granted the motion under Rule 23(b)(3), holding that "significant aspects" of the case could be resolved on a class basis including "the actual requirements of the job, the realistic expectations of the employer, the proper classification of Store Manager tasks as exempt or non-exempt, and Rite Aid's state of mind, knowledge, historical actions, and policies with respect to its classification and treatment of Store Managers."  Id at 16.

A recent decision by the California Supreme Court also applies to the present action.  In Sav-On Drug Stores, Inc v

8

1 <u>Superior Court</u>, the defendant opposed certification on similar
2 grounds as here, asserting that "whether any individual member of
3 the class is exempt or nonexempt from the overtime requirements
4 depends on which tasks that person actually performed and the
5 amount of time he or she actually spent on which tasks."  34 Cal
6 4th at 325.  According to the defendant in <u>Sav-On</u>, these individual
7 issues precluded plaintiffs from proving any meaningful
8 generalizations about the employment circumstances.  Id.  The court
9 disagreed and affirmed certification, concluding that "neither
10 variation in the mix of actual work activities undertaken * * * nor
11 differences in the total unpaid overtime compensation owed each
12 class member, bar certification as a matter of law."  <u>Sav-On</u>, 34
13 Cal 4th at 335.

14          As in <u>Tierno</u> and <u>Sav-on</u>, defendant in the instant action
15 argues that individual issues prevent the court from rendering a
16 class-wide determination regarding employment status.
17 Specifically, defendant notes that some distributors use full-time
18 employees, develop their own pricing formula and "choose to have
19 little or no contact with McKee representatives."  Doc #66 at 12.
20 But defendants in <u>Tierno</u> and <u>Sav-On</u> made similar arguments to no
21 avail.  For example, the defendant in <u>Sav-On</u> asserted that the
22 actual activities performed by the managers varied "significantly
23 from store to store and individual to individual, based on multiple
24 factors, including store location and size, physical layouts, sales
25 volume, hours of operation * * *."  <u>Sav-On</u>, 34 Cal 4th at 325.
26 Hence, as in <u>Sav-On</u>, the variation in sales operation and the
27 differences in the relationship between each distributor and
28 defendant does not bar certification.  <u>Sav-On</u>, 34 Cal 4th at 335.

9

Further, defendant's evidence — the declarations of thirty-nine distributors — does not undercut the court's finding. A closer examination of these declarations reveals that among the thirty-nine distributors, only about 31 percent sell other products, 21 percent "discuss" selling products or gaining space not authorized by chain headquarters and 28 percent use full-time employees.  Doc #49, Ex B.  These numbers hold even less force considering they arise from a non-representative sampling of the entire class.  Accordingly, even though individual issues exist, they do not bar class certification.

The court also notes that defendant's motion for reconsideration misinterprets the law regarding FRCP 23(b)(3). Defendant reads <u>Dunbar v Albertson's, Inc</u>, 141 Cal App 4th 1422 (2006), for the proposition that trial courts are required to conduct a higher level of inquiry under Rule 23(b)(3).  In <u>Dunbar</u>, the court of appeals reaffirmed the trial court's decision to deny certification, concluding that "the [lower] court performed its duty on the motion thoughtfully and thoroughly, and we have no cause to disturb its determination."  <u>Dunbar</u>, 141 Cal App 4th at 1434.  Id.  But this case does not compel a heightened standard. To the contrary, the court in <u>Dunbar</u> approved the trial court's decision with reluctance, noting that "case law since the trial court issued its ruling, particularly <u>Sav-On Drug Stores, Inc v Superior Court</u>, <u>supra</u>, 34 Cal 4th 319, have called into question the key premises of the trial court's legal analysis."  Id at 1432.

Defendant also asserts that <u>Ramirez v Yosemite Water Co, Inc</u>, 20 Cal 4th 785 (1999), ruled that the necessity of individualized determinations weighs heavily against certification.

10

Id at 29. Yet the California Supreme Court noted in <u>Sav-On</u> that "<u>Ramirez</u> was not a class action and, to that extent, is not apposite. In <u>Ramirez</u>, [the court] did not even discuss certification standards, let alone change them." <u>Sav-On</u>, 34 Cal 4th at 336. The court further noted that "<u>Ramirez</u> is no authority for constraining trial courts 'great discretion in granting or denying certification.'" Id. See also id at 338 ("In sum, defendant's reliance on <u>Ramirez</u> [to defeat class certification] is misplaced.").

In sum, defendant's motion for reconsideration fails to persuade the court. Plaintiffs have met their burden in establishing that common issues predominate. Accordingly, defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge