1  EDWARD S. ZUSMAN, CA Bar No. 154366
   KEVIN K. ENG, CA Bar No. 209036
2  MARKUN, ZUSMAN & COMPTON LLP
   465 California Street, Suite 500
3  San Francisco, California 94104
   Telephone:     (415) 438-4515
4  Facsimile:     (415) 434-4505

5  Attorneys for Plaintiffs
   BRIANT CHUN-HOON &
6  CARLO GUGLIELMINO

7

8  WILLIAM H. PICKERING, Tenn. Bar No. 6883
   ANTHONY A. JACKSON, Tenn. Bar No. 14364
9  (Both Admitted Pro Hac Vice)
   CHAMBLISS, BAHNER & STOPHEL, P.C.
10 1000 Tallan Building
   Two Union Square
11 Chattanooga, Tennessee  37402
   Telephone:     (423) 756-3000
12 Facsimile:     (423) 265-9574

13 Attorneys for Defendant
   MCKEE FOODS CORPORATION

14

15

R. BRIAN DIXON, CA Bar No. 76247
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, California  94108-2693
Telephone:     (415) 433-1940
Facsimile:     (415) 399-8447

Attorneys for Defendant
MCKEE FOODS CORPORATION


ALAN H. SILBERMAN
SONNENSCHEIN NATH & ROSENTHAL LLP
(Admitted Pro Hac Vice)
7800 Sears Tower, 233 South Wacker Drive
Chicago, Illinois 60606-6404
Telephone:     (312) 876-8000
Facsimile:     (312) 876-7934

Attorneys for Defendant
MCKEE FOODS CORPORATION

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

19 BRIANT CHUN-HOON and CARLO
   GUGLIELMINO,

20              Plaintiffs,

21        v.

22 MCKEE FOODS CORPORATION, a
   Tennessee corporation; and DOES 1 through
23 100, inclusive,

24              Defendants.

25

26

27

28

Case No. C05-00620 VRW


**NOTICE OF JOINT MOTION AND JOINT
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT**


Date:     March 11, 2010
Time:     10:00 a.m.
Courtroom 6, 17th Floor

Hon. Vaughn R. Walker

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF JOINT MOTION**

TO THE COURT AND ALL INTERESTED PARTIES

PLEASE TAKE NOTICE THAT on March 11, 2010, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Vaughn R. Walker, United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Briant Chun-Hoon and Carlo Guglielmino and Defendant McKee Foods Corporation will and by this Motion do respectfully move the Court for final approval of the proposed settlement of this class action.

The parties make this Motion on the ground that the proposed settlement is fair, reasonable, and adequate and should therefore be approved pursuant to Fed. R. Civ. P. 23(e).  Preliminary approval of the proposed settlement was granted by the Court on October 15, 2009.  Notice to the class was thereafter provided in the manner approved by the Court.  No objections to the proposed settlement have been filed.

This Motion is based upon this Notice of Joint Motion and Joint Motion for Final Approval of Class Action Settlement, the parties' Memorandum of Points and Authorities in Support, the Declaration of M. Leisa Cagle reporting on the notice provided to the class and the responses received, the Declaration of Willard Bishop regarding the marketing seminars and case cost credits to be provided pursuant to the settlement, the papers previously filed by the parties in support of their Joint Motion for Preliminary Approval of Class Action Settlement, any reply papers submitted in support of this Motion, any oral argument of counsel, the complete file and record in this case, and such additional matters and information as the Court may consider.

Dated:  February 25, 2010

s/ Edward S. Zusman
EDWARD S. ZUSMAN
MARKUN, ZUSMAN & COMPTON LLP
Attorneys for Plaintiffs
BRIANT CHUN-HOON &
CARLO GUGLIELMINO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  February 25, 2010                              s/ William H. Pickering
                                              WILLIAM H. PICKERING
                                              CHAMBLISS, BAHNER & STOPHEL, P.C.
                                              Attorneys for Defendant
                                              MCKEE FOODS CORPORATION


Dated:  February 25, 2010                              s/ R. Brian Dixon
                                              R. BRIAN DIXON
                                              LITTLER MENDELSON
                                              A Professional Corporation
                                              Attorneys for Defendant
                                              MCKEE FOODS CORPORATION


Dated:  February 25, 2010                              s/ Alan H. Silberman
                                              ALAN H. SILBERMAN
                                              SONNENSCHEIN NATH & ROSENTHAL LLP
                                              Attorneys for Defendant
                                              MCKEE FOODS CORPORATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................1

III. THE MEDIATION AND THE SETTLEMENT .............................................2

IV. SETTLEMENT TERMS ........................................................................................3

    A. Confirmation of Distributor Independence ................................................3

    B. Marketing Seminars for Current Distributors ...........................................4

    C. Case Cost Credits for Current Distributors ...............................................4

    D. Provisions Applicable to Former Distributors ...........................................4

    E. Service Payments to Class Representatives ................................................5

    F. Attorneys' Fees and Expenses .....................................................................5

    G. Release of Claims ........................................................................................5

    H. No Admission of Liability ...........................................................................6

    I. Court Approval and Order of Dismissal .....................................................6

V. CLASS NOTICE AND FAVORABLE RESPONSE ..........................................6

VI. FINAL APPROVAL OF THE PROPOSED SETTLEMENT SHOULD BE GRANTED ....................................................................................................7

    A. Standard for Final Approval ........................................................................7

    B. The Settlement Should Be Presumed Fair .................................................8

    C. All Relevant Factors Favor Approval of the Settlement............................9

        1. Strength of Plaintiffs' Case and Risk of Further Litigation ........9

        2. Risk of Maintaining Class Action Status ..................................11

        3. Adequacy of Settlement.............................................................12

            (a) Monetary Consideration...........................................12

            (b) Confirmation of Independence ...................................13

            (c) Marketing Seminars ...................................................13

        4. Extent of Discovery Completed..................................................14

1

            5.      Experience and Views of Counsel ............................................................14

            6.      Reaction of Class Members to Proposed Settlement ................................15

VII.  CONCLUSION............................................................................................................16

1

## TABLE OF AUTHORITIES

2

### CASES

3  7-Eleven Owners for Fair Franchising v. Southland Corp.,

4          102 Cal. Rptr. 2d 777 (Cal. Ct. App. 2000) ................................................................8

5  Alberto v. GMRI, Inc., d/b/a Olive Garden, 252 F.R.D. 652 (E.D. Cal. 2008) .........................15

6  Church v. Consolidated Freightways, Inc., No. C-90-2290,

7          1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993) ..............................................8

8  Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992) ...........................................7, 8

9  Dunk v. Ford Motor Co., 56 Cal. Rptr. 2d 483 (Cal. Ct. App. 2000) .....................................8, 9

10  Ellis v. Naval Air Rework Facility, 87 F.R.D. 15 (N.D. Cal. 1980) ..........................................8

11  First State Orthopaedics v. Concentra, Inc., 534 F. Supp. 2d 500 (E.D. Pa. 2007) ...................16

12  Hanlon v. Chrysler Corp, 150 F.3d 1011 (9th Cir. 1998) ...........................................................8

13  Hopson v. Hanesbrands Inc., No. CV-08-0844,

14          2009 U.S. Dist. LEXIS 33900 (N.D. Cal. April 3, 2009) ..........................................16

15  In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., MDL Docket No. 901,

16          1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ...........................................9

17  In re M.L. Stern Overtime Litig., No. 07-CV-118,

18          2009 U.S. Dist. LEXIS 94671 (S.D. Cal. Oct. 9, 2009) .............................................16

19  In re Wash. Pub. Power Supply Sys. Secs. Litig., 720 F. Supp. 1379 (D. Ariz. 1989) ...............8

20  Knight v. Red Door Salons, Inc., No. 08-01520,

21          2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb 2, 2009) .................................14, 15, 16

22  Lewis v. Starbucks Corp., No. 2:07-CV-0490,

23          2008 U.S. Dist. LEXIS 83192 (E.D. Cal. Sept. 11, 2008) ..........................................14

24  Linney v. Cellular Alaska P'ship, 151 F.3d 1234 (9th Cir. 1998) ...............................................8

25  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,

26          221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................9, 14, 15, 16

27  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, (9th Cir. 1982) ...........................7-8

28

1

West v. Circle K Stores, Inc., No. Civ. S-04-0438,

   2006 U.S. Dist. LEXIS 42074 (E.D. Cal. Oct. 20, 2006) ............................................15

**STATUTES**

49 U.S.C. §395, et seq....................................................................................... 10-11

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................7

Fed. R. Civ. P. 23(e)(2)..................................................................................................1

**REGULATIONS**

IWC Wage Order No. 1-2001, §3(A)(2)............................................................... 10-11

I.      **INTRODUCTION**

The parties have negotiated a proposed settlement of this class action and have requested the Court's approval of the settlement.  [Joint Motion for Preliminary Approval of Class Action Settlement ("Joint Motion for Preliminary Approval"), Court Doc. 93.]  The proposed settlement was the result of extensive arms-length negotiations and was only achieved after the parties enlisted the aid of an experienced mediator.  [Id., Memorandum of Points and Authorities ("MPA") at 7-8, 25.]

By Order entered on October 15, 2009 [Court Doc. 100], the Court granted preliminary approval of the settlement.  [Id. at 7.]  The Court further approved the form and manner of notice proposed by the parties.  [Id. at 6-7.]

Notice of the proposed settlement was thereafter provided to the class in the manner approved by the Court.  [Declaration of M. Leisa Cagle (herein "Cagle Decl."), ¶¶ 4-5.]  **No objections to the proposed settlement have been filed.**  Of the 329 class members who were mailed notices of the proposed settlement, only 16 returned exclusion forms.  [Id., ¶11.]  Of the 148 class members who responded to the class notice, 132 submitted claim forms.  [Id., ¶9.]

The proposed settlement includes monetary consideration for the current and former distributors who comprise the class, confirmations by McKee of distributor independence, and the opportunity for class members to attend marketing seminars that have been planned with the assistance of a nationally recognized expert.

The parties respectfully submit that the proposed settlement is fair, reasonable, and adequate and should therefore be approved.  See Fed. R. Civ. P. 23(e)(2).  As discussed below, the proposed settlement easily satisfies Ninth Circuit standards for final approval.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs, Briant Chun-Hoon ("Chun-Hoon") and Carlo Guglielmino ("Guglielmino") (collectively "Plaintiffs"), were independent distributors of the products of Defendant McKee Foods Corporation ("McKee").  Pursuant to written Distributorship Agreements with McKee, Plaintiffs purchased products from McKee and then sold the products to their retail customers in the San Francisco Bay area.  Plaintiffs voluntarily terminated their agreements with McKee before this suit

1   was filed.  [Joint Case Management Statement (Court Doc. 26) at 2).]

2            Plaintiffs' Class Action Complaint alleges five separate causes of action for damages:

3   violation of the overtime requirements of the California Labor Code, fraud, negligent

4   misrepresentation, breach of contract, and unfair and fraudulent business practices.  [Class Action

5   Complaint (Court Doc. 1, Ex. B), ¶¶28-60.]  The Complaint also includes a sixth cause of action for

6   declaratory relief.  [Id., ¶¶61-64.]  Each cause of action is based upon the premise that the terms of

7   the written Distributorship Agreements between the parties should be disregarded and that the trier

8   of fact should conclude that Plaintiffs and all other members of the putative class have, in practice,

9   been treated as employees of McKee rather than independent contractors.  [Id., ¶¶23, 35-37.]

10           The parties engaged in extensive discovery and investigation of Plaintiffs' allegations.  The

11  depositions of Plaintiffs and certain McKee representatives were taken.  Distributors of McKee

12  products in California were interviewed by the parties, and the declarations of 39 California

13  distributors are part of the record in this case.  [Court Doc. 54 (Declarations Manually Filed).]  Both

14  sides submitted and responded to extensive document requests and written interrogatories.  Evidence

15  introduced thus far, including the deposition testimony and declarations of various California

16  distributors, suggests that McKee does not control the manner and means by which distributors

17  operate their businesses and that, among other things, distributors set their own schedules, hire their

18  own employees, sell other manufacturers' products, vary from McKee's suggested prices, own their

19  own vehicles and equipment, and operate independent businesses in which they may earn a profit or

20  sustain a loss.

21           The evidence regarding Plaintiffs' status as independent contractors is set forth in detail in

22  the parties' Joint Motion for Preliminary Approval.  [Court Doc. 93, MPA at 4-7.]  The Joint Motion

23  for Preliminary Approval likewise discusses the potential applicability of the outside sales and motor

24  carrier exemptions upon which McKee places further reliance.  [Id. at 7, 18-20.]

25  **III.    THE MEDIATION AND THE SETTLEMENT**

26           Over a period of several months, counsel for the parties engaged in settlement discussions

27  but were unable to agree on terms of settlement.  Some progress was made, but the parties were

28

Notice and Joint Motion for Final
Approval of Class Action Settlement          2                    Case No. C-05-00620 VRW

1  unable to fully resolve their differences. [Declaration of Edward S. Zusman (herein "Zusman
2  Decl."), Court Doc. 96, ¶14.]

3      Counsel for the parties agreed that mediation could be worthwhile, so long as the mediator
4  was highly respected, knowledgeable and experienced.  After further discussion, counsel agreed to
5  engage former United States District Judge Eugene F. Lynch to mediate the case.  Judge Lynch is
6  affiliated with the Judicial Arbitration and Mediation Service (JAMS).  In preparation for the
7  mediation, the parties submitted extensive evidence to Judge Lynch, including documentary exhibits,
8  deposition excerpts, and distributor declarations.  [Id., ¶15.]

9      Judge Lynch conducted a full-day mediation with the parties and their counsel at the offices
10  of JAMS on January 7, 2009.  Counsel for both parties vigorously advocated their respective clients'
11  positions.  During the mediation, the parties met together and separately with Judge Lynch and,
12  during the course of the day, put forth various proposals and counterproposals for the resolution of
13  this matter.  Judge Lynch was ultimately able to facilitate a settlement of the case on the terms set
14  forth below.  [Id., ¶16.]

15  **IV.    SETTLEMENT TERMS**

16      The terms of settlement are specifically set forth in the Settlement Agreement attached as
17  Exhibit A to the parties' Joint Stipulation of Settlement and Release [Court Doc. 94] and in the
18  parties' Joint Motion for Preliminary Approval [Court Doc. 93, MPA at 8-14].  The following is a
19  summary of the essential terms of settlement.

20      **A.    Confirmation of Distributor Independence**

21      As part of the proposed settlement, McKee will confirm that the independent distributors of
22  its products have and have always had the right to operate their businesses as they choose.  McKee
23  will confirm that distributors have various rights and freedoms demonstrating their independence,
24  including rights and freedoms that Plaintiffs called into question in their Class Action Complaint,
25  and McKee will take steps to ensure that distributors are reminded and further informed of these
26  matters.

27      Specifically, in order to ensure that the current distributors of its products have a clear,
28  ongoing understanding of their independence, McKee will confirm that various principles of

1  independence apply and have always applied to the members of the class.  Those principles are listed

2  in Section 2 of the Settlement Agreement [Court Doc. 94-1 at 3-5] and in the parties' Joint Motion

3  for Preliminary Approval [Court Doc. 93, MPA at 8-9].

4  **B.    Marketing Seminars for Current Distributors**

5  McKee will, at its own expense, conduct marketing seminars for the current distributors of its

6  products in both Northern and Southern California.  The seminars will reemphasize the distributors'

7  independence and will provide examples of business models and practices which demonstrate that

8  independence and which various California distributors have successfully used to increase their sales

9  and profitability.  A minimum of two seminar dates and locations will be offered in both Northern

10  and Southern California, and distributors may attend any one of the seminars from the dates and

11  locations offered.  The sessions will occur within one year after the final approval of the class action

12  settlement.

13  **C.    Case Cost Credits for Current Distributors**

14  McKee will provide the current distributors of its products case cost credits in the amount of

15  $250.00 per distributor.  The credits will be provided within 60 days of the final approval of the

16  settlement and may be used by the distributors for the purpose of promoting sales of their Little

17  Debbie and Sunbelt products.

18  **D.    Provisions Applicable to Former Distributors**

19  Members of the class who are former, rather than current, distributors of McKee products

20  may elect one of the following two options under the terms of the proposed settlement:

21  1.    Former distributors may attend marketing seminars conducted by McKee of the type

22  described in Paragraph B above.  The marketing seminars will include business strategies,

23  recommendations and other information of general interest to business people (not just to

24  distributors of McKee products).  In addition, former distributors who voluntarily terminated their

25  Distributorship Agreements with McKee in good standing may be considered for reappointment as

26  independent distributors in any territories that are open and available.  Former distributors who are

27  interested in reappointment must go through McKee's regular appointment process which includes a

28  credit check and interview.

Notice and Joint Motion for Final
Approval of Class Action Settlement          4          Case No. C-05-00620 VRW

2.      Former distributors who do not elect to attend one of the marketing seminars described above or to request reappointment as a distributor will receive a payment in the amount of $250.00.

**E.      Service Payments to Class Representatives**

The Plaintiffs/Class Representatives, Briant Chun-Hoon and Carlo Guglielmino, will file an application with the Court for compensation for their efforts and services on behalf of the class. McKee will not oppose service payments to the two Class Representatives in the amount of $5,000.00 each.  Mr. Guglielmino and Mr. Chun-Hoon actively participated in the case.  They regularly monitored proceedings, had their depositions taken, participated personally in the ENE session and in the mediation, and provided detailed discovery responses and thousands of pages of their personal and business records for review by McKee.  [Declaration of Edward S. Zusman in Support of Final Approval, ¶ 10.]

**F.      Attorneys' Fees and Expenses**

Class counsel, Markun, Zusman & Compton, LLP, will submit an itemized and properly supported application for attorneys' fees and expenses.  McKee will not oppose an application for attorneys' fees not to exceed $255,000.00 (which class counsel has advised is significantly less than counsel's actual time investment in this case) and expenses not to exceed $35,000.00.

If the settlement is given final approval by the Court, the payments to former distributors, class representatives, and class counsel will be made within five (5) business days after the date of final approval in accordance with the terms of the Settlement Agreement attached as Exhibit A to the parties' Joint Stipulation of Settlement and Release.  The case cost credits for current distributors will be provided within 60 days of the date of final approval.

**G.      Release of Claims**

The Plaintiffs/Class Representatives are executing a general release of any and all claims against McKee.  By operation of the Court's final order approving the proposed settlement, all class members, jointly and severally, with the sole exception of class members who submit timely exclusion forms, will fully release and forever discharge McKee from any and all claims, demands or liability of the types which were asserted or which could have been asserted in this lawsuit.

Further, by operation of the Court's final order approving the proposed settlement, the class members, with the sole exception of those who submit timely exclusion forms, will be deemed to have agreed not to sue or bring any judicial or administrative action against McKee with respect to the claims that the class members have released.  The specific terms of these releases are set forth in the Settlement Agreement and the parties' Joint Motion for Final Approval [Court Doc. 93, MPA at 13].

**H.     No Admission of Liability**

The proposed settlement explicitly provides that the settlement is a compromise of doubtful and disputed claims and is not to be interpreted as an admission of liability by McKee.  The proposed settlement acknowledges that McKee has agreed to the settlement to avoid the trouble and expense of litigation and that McKee has denied and continues to deny any and all liability to Plaintiffs and the class.

**I.     Court Approval and Order of Dismissal**

The proposed settlement is expressly subject to Court approval.  If the settlement is not approved by the Court, the parties' Settlement Agreement will be null and void and will not be used nor be admissible in any subsequent proceedings in this action or in any other proceeding or action.  If the proposed settlement is approved, the Court's final order will include a dismissal with prejudice of all claims and potential claims of Plaintiffs and the class members who did not opt out of the settlement.  The claims of all class members who opted out of the settlement will be dismissed without prejudice.

**V.     CLASS NOTICE AND FAVORABLE RESPONSE**

In accordance with the Court's October 15 order granting preliminary approval of the proposed settlement, notices of the settlement were mailed to members of the class on October 28, 2009.  [Cagle Decl., ¶4.]  Pursuant to the Court's order, the notice process was administered by McKee.  Ms. Leisa Cagle, McKee's Vice President and Controller, was responsible for mailing the class notices, claim forms and exclusion forms.  [Id., ¶¶1-2.]  Ms. Cagle also received and tabulated the responses.  [Id., ¶¶6, 8-11.]  The mailing and tabulation process was observed by an independent auditor from the firm of Ernst & Young.  [Id., ¶¶3-4, 6.]

1    McKee followed the notice procedures set forth in the parties' Joint Motion for Preliminary

2    Approval to ensure that class members received the "best notice that is practicable under the

3    circumstances." Fed. R. Civ. P. 23(c)(2)(B).  Those procedures were specifically approved by the

4    Court, as was the content of the class notice.  [Order granting preliminary approval (Court Doc. 100)

5    at 6-7.]

6        Notices were mailed to all class members using their last known addresses from McKee's

7    records.  [Cagle Decl., ¶4.]  No mailings to <u>current</u> distributors were returned as undeliverable.  [<u>Id</u>.,

8    ¶¶7-8.]  A total of 39 mailings to <u>former</u> distributors were initially returned as undeliverable.  [<u>Id</u>.,

9    ¶8.]  McKee then used the former distributors' social security numbers and last known addresses and

10   telephone numbers in an effort to obtain more current addresses.  [<u>Id</u>., ¶7-8.]

11       Additional notices were sent to the addresses so obtained, and the majority of these

12   supplemental mailings were <u>not</u> returned.  Only 14 of the supplemental mailings were returned as

13   undeliverable, and all other members of the class are presumed to have received the class notice,

14   claim form, and exclusion form.  [Order granting preliminary approval (Court Doc. 100) at 6.]  Ms.

15   Cagle's Declaration provides a complete recap of the original and supplemental class mailings and

16   the claim forms and exclusion forms received.  [Cagle Decl., ¶¶8-10.]

17       **No objections to the proposed settlement have been filed.**  Only a small number of

18   exclusion forms were returned.  Of the 315 mailings that are presumed to have been received, only

19   16 class members (5.08%) submitted exclusion forms.  [Cagle Decl., ¶11.]

20   VI.    <u>**FINAL APPROVAL OF THE PROPOSED SETTLEMENT SHOULD BE**</u>

21   <u>**GRANTED**</u>

22       A.    <u>**Standard for Final Approval**</u>

23       Judicial policy in the Ninth Circuit strongly favors the settlement of class actions.  <u>Class</u>

24   <u>Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992).  Although the Court possesses

25   "broad discretion" in determining whether a proposed class action settlement is fair, the Court's role

26   "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

27   product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

28   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  <u>See</u> <u>Officers for</u>

Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).  Accordingly, the Court should

give due regard to what is otherwise a "private consensual agreement" between the parties.  See id.;

Church v. Consol. Freightways, Inc., No. C-90-2290, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May

3, 1993); In re Wash. Pub. Power Supply Sys. Secs. Litig., 720 F. Supp. 1379 (D. Ariz. 1989), aff'd

sub nom, Class Plaintiffs, 955 F.2d 1268.  A court's approval of a class action settlement will only

be reversed for a clear abuse of discretion.  See Officers for Justice, 688 F.2d at 626 ("[W]e reverse

only upon a strong showing that the district court's decision was a clear abuse of discretion."); Class

Plaintiffs, 955 F.2d at 1276; Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998).

At the final approval hearing, the Court balances a variety of factors in determining whether

final approval of the settlement should be granted.  These factors include

> the strength of the plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class action
> status throughout the trial; the amount offered in settlement; the extent
> of discovery completed and the stage of the proceedings; the
> experience and views of counsel; the presence of a governmental
> participant; and the reaction of the class members to the proposed
> settlement.

Hanlon v. Chrysler Corp, 150 F.3d 1011, 1026 (9th Cir. 1998).

As discussed below, a review of these factors shows that the standard for final approval is

easily met.

**B.    The Settlement Should be Presumed Fair**

The Court should begin its analysis with a presumption that the proposed settlement is fair

and should be approved:

> [A] presumption of fairness exists where: (1) the settlement is reached
> through arms-length bargaining; (2) investigation and discovery are
> sufficient to allow counsel and the court to act intelligently; (3)
> counsel is experienced in similar litigation; and (4) the percentage of
> objectors is small.

Dunk v. Ford Motor Co., 56 Cal. Rptr. 2d 483 (Cal. Ct. App. 2000); 7-Eleven Owners for Fair

Franchising v. Southland Corp., 102 Cal. Rptr. 2d 777 (Cal. Ct. App. 2000); accord Ellis v. Naval

Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981).

1   In the instant case, all four factors are present.  First the settlement was reached only after

2   arms-length and good faith negotiations.  [Zusman Decl. (Court Doc. 96), ¶¶14-16.]  As such, there

3   is an absence of any indicia of collusion.  Second, the parties engaged in a significant exchange of

4   relevant data in advance of early neutral evaluation (ENE) and the eventual mediation.  [Zusman

5   Decl., ¶¶11-12.]   As a result of these efforts, the parties had sufficient information to evaluate the

6   strengths and weaknesses of their respective claims and defenses, whether to pursue litigation or

7   settle, and the appropriate settlement value for the claims at issue.

8   Third, both Plaintiffs' counsel and counsel for McKee are experienced in class-action

9   litigation, acted in good faith, and have represented their clients' best interests in reaching the

10  settlement.

11  > 'Great weight' is accorded the recommendation of counsel, who are
    > most closely acquainted with the facts of the underlying litigation.
12  > This is because 'parties represented by competent counsel are better
    > positioned than courts to produce a settlement that fairly reflects each
13  > party's expected outcome in the litigation.'  Thus, 'the trial judge,
    > absent fraud, collusion, or the like, should be hesitant to substitute its
14  > own judgment for that of counsel.'

15

16  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations

17  omitted).  See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., MDL Docket No. 901,

18  1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that

19  proposed settlement represented beneficial result for class compelling factor in approving

20  settlement).

21  Finally, there have been no objections to the settlement.  Thus, there is a presumption that the

22  class relief in the settlement is fair.  See generally Dunk v. Ford Motor Co., 48 Cal. App. 4th at

23  1802.

24  **C.     All Relevant Factors Favor Approval of the Settlement**

25  **1.     Strength of Plaintiffs' Case and Risk of Further Litigation**

26  This factor was briefed extensively in the parties' Joint Motion for Preliminary Approval.

27  [Court Doc. 93, MPA at 15-20.]  Based upon the significant discovery and investigation that have

28  taken place, Plaintiffs and class counsel recognize that there is a significant risk of an outcome

1  unfavorable to Plaintiffs and the class.  [Zusman Decl. (Court Doc. 96), ¶18.]  Plaintiffs continue to

2  assert that their claims have merit but have acknowledged that there is a substantial basis for the

3  arguments advanced by McKee.  [Id. at 15.]  Of course, McKee likewise understands that a measure

4  of risk and uncertainty is inherent in any lawsuit.

5       Plaintiffs recognize that one barrier to proving the existence of an "employee" relationship

6  between the distributors and McKee is the relevant documentation which expresses the intent to

7  create an independent contractor relationship.  [Zusman Decl., ¶18.] The burden would be on the

8  Plaintiffs to demonstrate that the terms of the written documents (including the operative

9  Distributorship Agreements) should be disregarded, but McKee has introduced significant evidence

10  that the actual relationship between McKee and the distributors was consistent with the

11  distributorship Agreements.  [Id.]  Plaintiffs acknowledged in their deposition testimony that McKee

12  did not control the manner and means by which they operated their businesses.  [Chun-Hoon Depo.

13  (Court Doc. 50-2) at 197:19-22; Guglielmino Depo. (Court Doc. 50-3) at 112:22-113:1, 133:1-4.]

14  All class members who have provided declarations have confirmed their independence and have

15  provided numerous detailed examples of independent business decisions that have directly impacted

16  their sales and profits.

17       Further, it is McKee's position that, even if Plaintiffs could establish that they were

18  "employees" of McKee, they cannot prevail on their Labor Code claims because of the applicability

19  of the outside sales and motor carrier exemptions.  The law and McKee's position with respect to

20  both exemptions are set forth in the parties' Joint Motion for Preliminary Approval.  [Court Doc. 93,

21  MPA at 18-20.]

22       With respect to the outside sales exemption, both Plaintiffs acknowledged that selling was

23  key to their business operations.  Plaintiffs' sales activities are described in detail in their

24  depositions.  [Chun-Hoon Depo. at 163-79; Guglielmino Depo. at 196-215.]  Both Plaintiffs

25  acknowledged that there typically would be no McKee representative present when these activities

26  were taking place.  [Chun-Hoon Depo. at 182:12-19; Guglielmino Depo. at 212:3-10.]

27       The motor carrier exemption applies if Plaintiffs' hours operating their vehicles are regulated

28  by the U.S. Department of Transportation ("DOT") pursuant to 49 U.S.C. §395, et seq.  IWC Wage

Order No. 1-2001, §3(A)(2).  An individual's hours of service are regulated by DOT if he operates a commercial motor vehicle with a gross vehicle weight of more than 10,000 pounds and is engaged in interstate commerce.  49 U.S.C. §395.  As discussed in the parties' Joint Motion for Preliminary Approval, McKee contends that there is ample evidence to satisfy the interstate commerce requirement, [1] and McKee likewise believes that the vehicles of a majority of California distributors have gross vehicle weights in excess of 10,000 pounds.  [Court Doc. 93, MPA at 19-20.]

Plaintiffs do not agree that either the outside sales exemption or the motor carrier exemption applies, but Plaintiffs recognize that McKee has offered evidence that could support the applicability of the exemptions and that this increases the risk of an outcome unfavorable to the Plaintiffs and the class.  [Zusman Decl. (Court Doc. 96), ¶19.]  In addition, both sides recognize that the application of the motor carrier exemption involves unsettled issues of law and that this uncertainty would increase the risk and expense of litigation if the settlement were not approved.

**2.     Risk of Maintaining Class Action Status**

The Court may, of course, revisit its decision to provisionally certify a damages class in this case.  McKee has vigorously contested class certification throughout these proceedings and believes that, ultimately, decertification is likely for two reasons:

1.     Further discovery will confirm that the issues in this case cannot be tried on a representative basis.  In other words, any common evidence that Plaintiffs may offer cannot provide a basis for adjudicating the rights of other distributors who have chosen to operate their businesses differently.

2.     Developments in the law subsequent to the Court's decision to provisionally certify a class in this case support decertification.  Those developments are discussed at pages 21-23 of the parties' Joint Motion for Preliminary Approval.  [Court Doc. 93, MPA at 21-23.]

Support for McKee's position that representative litigation is not feasible in this action is set forth in the parties' Joint Motion for Preliminary Approval.  [Court Doc. 93, MPA at 20-21.]  In adjudicating the central issue of independent contractor status, the Court in this case would be

---

[1] Among other things, both plaintiffs acknowledged that they placed their orders with McKee headquarters in Tennessee and that the products were shipped to them from out of state and would then be sold to retailers and ultimately to consumers in a continuous stream of commerce.  [Chun-Hoon Depo. at 149:22-150:10; Guglielmino Depo. at 154:3-15.]

1    required to consider multiple factors and combinations of factors having varying applicability to

2    different members of the class.  McKee submits that the proof in this case will show that distributor

3    business models and practices vary widely with respect to factors that would be directly relevant to

4    the Court's evaluation of independent contractor status.  These factors include but are not limited to

5    sales of competing products, variances from suggested pricing, hiring of employees, ownership of

6    multiple sales vehicles, operations in multiple sales areas, declining to sell to unprofitable accounts,

7    and not following McKee's marketing suggestions.  [Id.]

8        Plaintiffs do not agree with McKee's position on the issue of decertification but recognize

9    that there are bases for McKee's arguments.  The risk of decertification is present in this case and is

10   an additional factor favoring the proposed settlement.  [Zusman Decl. (Court Doc. 96), ¶20.]

11       **3.    Adequacy of Settlement**

12       The proposed settlement is beneficial to the class and provides fair and adequate

13   consideration, particularly in light of the risks associated with the continued prosecution of this case.

14       (a)    **Monetary Consideration**

15       Monetary consideration in the amount of $250.00 is being offered to each current and former

16   distributor.  The monetary consideration to current distributors will be provided in the form of case

17   cost credits which the distributors may use to promote the sale of the products that they buy from

18   McKee and resell to their customers.  The case cost credits will have an immediate monetary value

19   to the distributors since they will be paying $250.00 less for the products they buy from McKee and

20   will have a corresponding increase in their gross profits.  [Declaration of Willard Bishop (herein

21   "Bishop Decl."), ¶8.]  In addition, as explained in the declaration of an industry expert filed

22   herewith, the $250.00 case cost credits will provide the distributors with opportunities to promote

23   their products to existing and prospective customers and to achieve further, incremental increases in

24   their sales and profits.  Specifically, distributors could use the case cost credits as a way of offering

25   incentives to retailers in order to gain new business from a prospective customer or to increase

26

27

28

business from an existing customer.[2]  [Id.]

Former distributors also have the option of obtaining monetary consideration in the amount of $250.00.  Alternatively, former distributors may elect to attend one of the marketing seminars described in the settlement.  Former distributors who elect this option and who voluntarily terminated their Distributor Agreements with McKee in good standing may also be considered for reappointment as independent distributors in any territories that are open and available.

(b)    **Confirmation of Independence**

Plaintiffs' Class Action Complaint challenged the independence of the distributors and alleged that their actions were controlled in specific ways.  McKee denied those allegations, and there is substantial evidence in the record to indicate that McKee does not control the manner and means by which distributors operate their businesses.  Nevertheless, McKee will confirm, as a part of the settlement, that distributors have and have always had numerous rights and freedoms demonstrating their independence, including rights and freedoms that Plaintiffs specifically called into question in their Class Action Complaint.  Such confirmation will ensure that distributors have a clear, ongoing understanding of their independence and their right to operate their businesses as they choose.

(c)    **Marketing Seminars**

Marketing seminars will be made available to both current and former distributors at McKee's expense.  The seminars will include strategies, recommendations and other information that will be beneficial to any business person and particularly to individuals engaged in the distribution of food products (both McKee products and products supplied by other manufacturers).  In addition, the seminars will reemphasize the principles of distributor independence and will provide examples of business models and practices that other California distributors have used successfully to increase their sales and profitability.

---

[2] Although McKee hopes that current distributors will use the case costs credits to promote their businesses in this manner, the Settlement Agreement contains no mechanism by which McKee can monitor the use of the credits.  If the settlement is approved, McKee will provide the credits to all current distributors, and it will be up to the distributors how best to make use of the credits.

Notice and Joint Motion for Final
Approval of Class Action Settlement          13          Case No. C-05-00620 VRW

McKee has gone to considerable effort to ensure that the marketing seminars will be of significant value to those distributors who choose to attend.[3]  McKee retained Mr. Willard Bishop, a nationally known consultant for retailers and suppliers, to assist in the development of the seminar agenda.  [Bishop Decl., ¶¶ 1-3.]  A detailed seminar agenda has been developed and is attached as Exhibit A to Mr. Bishop's declaration.

The seminar presentations will have significant value to those who choose to attend.  [Bishop Decl., ¶¶6-7.]  Among other things, the seminars will provide the attendees with valuable information regarding their personal and professional development, customer relationships, business planning, and ways to leverage their businesses to maximize sales.  [Id. ¶6.]  The seminars will contain actual case studies of business models and practices that have been implemented successfully and will provide ample opportunity for questions and answers.  [Id.]

**4.    Extent of Discovery Completed**

The extent of discovery completed and the stage of the proceedings at the time of settlement are relevant "in determining the adequacy of the parties' knowledge of the case."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004).  Significantly, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  Knight v. Red Door Salons, Inc., No. 08-01520, 2009 U.S. Dist. LEXIS 11149 at *10 (N.D. Cal. Feb. 2, 2009).

There has been extensive discovery in this case, followed by the ENE and mediation.  [Zusman Decl. (Court Doc. 96), ¶¶11-12, 15-16.]  Although further discovery would remain (at significant cost and questionable return), the discovery that has occurred is more than sufficient for the parties and the Court to conduct a meaningful evaluation of the merits.  Cf. Lewis v. Starbucks Corp., No. 2:07-CV-0490, 2008 U.S. Dist. LEXIS 83192 at *17 (E.D. Cal. September 11, 2008) (approval of class action settlement following limited discovery is proper so long as discovery

---

[3] Attendance at the seminars is completely optional.  Current distributors are not required to attend the seminars and will receive the $250.00 case cost credits regardless of whether they attend.  Former distributors have the option of attending the seminars and also being eligible for reappointment (Option 1) or simply accepting a $250.00 cash payment (Option 2).

1    allowed the parties to form a clear view of the strengths and weaknesses of their position; settlement

2    of $60.00 per class member held to be a reasonable compromise).

3        **5.**    **Experience and Views of Counsel**

4        As noted above, the recommendations and views of counsel should be accorded great weight.

5    Absent evidence of fraud or collusion, the Court should presume that counsel is in the best position

6    to judge the merits and risks of the litigation for which counsel is responsible and the reasonableness

7    of a proposed settlement.

8        Plaintiffs' attorneys in the instant case are experienced class action litigators.  [Zusman Decl.

9    (Court Doc. 96), ¶¶3-7.]  They have pursued the case diligently and have conducted a thorough

10   evaluation of their clients' positions.  [Id., ¶¶ 10-20.]  In the view of class counsel, the proposed

11   settlement is fair, reasonable and adequate.  [Id., ¶¶ 18-21.]

12       Significantly, the proposed settlement in this case was the product of extensive, good faith,

13   arms-length negotiation.  When the parties were unable to resolve the case through negotiation

14   between their attorneys, they sought the assistance of a respected, experienced mediator who

15   reviewed voluminous evidence submitted by the parties and worked diligently with counsel to

16   negotiate a reasonable settlement.

17       As noted by the Court in Alberto v. GMRI, Inc. d/b/a Olive Garden, 252 F.R.D. 652 (E.D.

18   Cal. 2008), although assessing the fairness and adequacy of a settlement can be challenging, the

19   Court is assisted in its inquiry when the settlement is the result of vigorous, arms-length bargaining.

20   Alberto, 252 F.R.D. at 666.  This is particularly true when the parties have employed a prominent

21   mediator to assist in the negotiation of the settlement.  Id.

22       **6.**    **Reaction of Class Members to Proposed Settlement**

23       The reaction of the class to a proposed settlement is, of course, an appropriate factor for the

24   Court to consider.  Nat'l Rural, 221 F.R.D. at 528.  In this connection, "[t]he lack of objections to

25   the settlement is perhaps the most significant factor weighing in favor of settlement."  West v. Circle

26   K Stores, Inc., No. Civ. S-04-0438, 2006 U.S. Dist. LEXIS 76558, at *19-*20 (E.D. Cal. Oct. 20,

27   2006).  Accord Knight, 2009 U.S. Dist. LEXIS 11149 at *11 ("It is established that the absence of

28   large number of objections to a proposed class action settlement raises a strong presumption that the

1   terms of a proposed class action settlement are favorable to the class members"); <u>Nat'l Rural</u>, 221

2   F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further

3   support for final approval of the Proposed Settlement").  Numerous cases have considered the

4   absence of objections (or even a small number of objections) as a factor favoring approval of

5   settlements.  <u>See, e.g.</u>, <u>In re M.L. Stern Overtime Litig.</u>, No. 07-CV-118, 2009 U.S. Dist. LEXIS

6   94671, at *8 (S.D. Cal. Oct. 9, 2009); <u>Hopson v. Hanesbrands, Inc.</u>, No. CV-08-0844, 2009 U.S.

7   Dist. LEXIS 33900, at *29 (N.D. Cal. April 3, 2009); <u>Knight</u>, 2009 U.S. Dist. LEXIS 11149, at *11;

8   <u>Nat'l Rural</u>, 221 F.R.D. at 529.

9       In the instant case, **no objections whatsoever to the proposed settlement** have been filed.

10   Moreover, the class members' responses to the settlement have been positive.  Of the 315 members

11   of the class who received (or are presumed to have received) notice of the settlement, only 16

12   (5.08%) submitted exclusion forms.  <u>Cf</u>. <u>First State Orthopaedics v. Concentra, Inc.</u>, 534 F. Supp. 2d

13   500, 517 (E.D. Pa. 2007) (small percentage of exclusions in comparison to total mailings considered

14   a factor favoring approval).

15   **VII.   <u>CONCLUSION</u>**

16       The proposed settlement which the parties have negotiated is fair, reasonable and adequate.

17   Accordingly, final approval of the settlement should be granted.

18

19   Dated:  February 25, 2010                  s/ Edward S. Zusman

20                                              EDWARD S. ZUSMAN
                                               MARKUN, ZUSMAN & COMPTON LLP

21                                             Attorneys for Plaintiffs
                                               BRIANT CHUN-HOON &

22                                             CARLO GUGLIELMINO

23   Dated:  February 25, 2010                  s/ William H. Pickering

24                                              WILLIAM H. PICKERING
                                               CHAMBLISS, BAHNER & STOPHEL, P.C.

25                                             Attorneys for Defendant
                                               MCKEE FOODS CORPORATION

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  February 25, 2010

_____s/ R. Brian Dixon_____
R. BRIAN DIXON
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
MCKEE FOODS CORPORATION

Dated:  February 25, 2010

_____s/ Alan H. Silberman_____
ALAN H. SILBERMAN
SONNENSCHEIN NATH & ROSENTHAL LLP
Attorneys for Defendant
MCKEE FOODS CORPORATION