IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANT CHUN-HOON and CARLO GUGLIELMINO,<br><br>    Plaintiffs,<br><br>v<br><br>MCKEE FOODS CORPORATION, a Tennessee corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | C 05-620 VRW<br><br>ORDER<br><br>Class Action |

        The parties seek final approval of settlement in this class action against McKee Foods Corporation ("McKee") for violation of the overtime requirements of the California Labor Code, fraud, negligent misrepresentation, breach of contract, unfair and fraudulent business practices and declaratory relief. Docs #103; 1.

As set forth in the court's October 15 order, Doc #100, McKee manufactures Little Debbie Snack Cakes and Sunbelt snacks and cereals and sells its products to independent distributors, who then resell the products to supermarkets, mass merchandisers and other retail outlets.  After unsuccessful settlement discussions, the parties engaged former United States District Judge Eugene F Lynch to mediate the case.  The mediation proved fruitful and on August 11, 2009, the parties moved for preliminary approval of the proposed settlement.

The court granted preliminary approval of the class action settlement on October 15, 2009.  Doc #100.  The factual background of the case and the terms of the settlement agreement have not changed since the issuance of that order; therefore, the court does not rescribe those items here.

Notice of the proposed settlement was provided to the class, and of the 329 class members who were mailed notices of the proposed settlement, only sixteen (16) returned exclusion forms.  Doc #103 at 8; Cagle Decl at ¶¶4-5, 9.  Of the 148 class members who responded to the class notice, 132 submitted claim forms.  Id.  No objections to the proposed settlement have been filed.  Id.

The parties, jointly, now move for final approval of the proposed settlement pursuant to FRCP 23(e).  Doc #103.  Class counsel also move for an order granting attorney fees, costs and class representative incentive payments.  Doc #106.  The court held a final settlement approval hearing on March 11, 2010, at which time the parties clarified that the settlement excludes new or additional individuals who were not part of the class as of the date of notice.

2

Before taking up the merits of the parties' application, the court notes that in this case, like many class actions, variables pertinent to the award of reasonable fees to class counsel, including the strength of the class's case, the opportunity costs incurred by class counsel, the spectra of risk faced by the parties and the business calculus that drives settlement discussions, are difficult to quantify. In an effort to obtain at least some measure of these factors, the undersigned has used the lodestar cross-check method, crafted by the late Judge Edward Becker, see <u>In re General Motors Corp Pick-Up Truck Fuel Tank Products Liability Litigation</u>, 55 F3d 768, 820 (3d Cir 1995), to evaluate whether, given the circumstances presented in a particular class action, a negotiated fee award appears reasonable. As discussed in more detail below, the above-captioned case provides further evidence of the utility of the lodestar cross-check method in evaluating the true value of a proposed settlement and thus the worth of the services rendered by class counsel in bringing and prosecuting the action. As explained below, that analysis here suggests that this was a notably weak case and counsel's efforts could more profitably have been devoted to other pursuits.

For the reasons that follow, the court GRANTS the parties' motion for final settlement approval and GRANTS class counsel's motion for fees, costs and incentive payments.

//
//
//
//

3

I

Federal Rule of Civil Procedure 23(e) requires court approval for the settlement of any class action. In order to be approved, a settlement must be "fundamentally fair, adequate and reasonable." Torrisi v Tucson Elec Power Co, 8 F3d 1370, 1375 (9th Cir 1993) (quoting Class Plaintiffs v Seattle, 955 F2d 1268, 1276 (9th Cir 1992), cert denied, 506 US 953 (1992), cert denied, 512 US 1220 (1994)). In assessing whether a settlement is "fair, reasonable and adequate" under FRCP 23(e), the court is to consider: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.[1] Churchill Village v General Electric, 361 F3d 566, 575 (9th Cir 2004) (citing Hanlon v Chrysler Corp, 150 F3d 1011, 1026 (9th Cir 1998)). To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at. See Manual for Complex Litigation (Fourth) § 21.6 (2004).

The first factor, the strength of plaintiffs' case, favors settlement, as plaintiffs' remaining claims appear tenuous. As class counsel recognize, there are significant barriers plaintiffs must overcome in making their case, including proving

---

[1] Because there is no government participant in this litigation, the seventh factor courts consider in approving a class action settlement does not apply in this case.

4

the existence of an employer-employee relationship between McKee and the distributors. See Doc #103 at 17. The parties seem to agree that McKee has "introduced significant evidence that the actual relationship between McKee and the distributors was consistent with the distributorship Agreements," which allegedly envision an independent contractor, rather than an "employee," relationship. Id. Because plaintiffs will likely face difficulty in establishing the existence of an employer-employee relationship, the likelihood of plaintiffs succeeding on their claims seems remote.

For the same reason, the second factor, the risk, expense, complexity and likely duration of further litigation, favors settlement as well. Given the tenuous nature of plaintiffs' claims described above, there is a significant risk of an outcome unfavorable to the plaintiffs and the class.

The risk of maintaining class action status throughout the trial additionally favors settlement, albeit slightly. McKee contends that developments in case law as well as further discovery will confirm that the issues in this case cannot be tried on a representative basis. Doc #103 at 18. While such an assertion does not lead to the conclusion that maintaining a class is unlikely, it does appear plaintiffs agree that before the conclusion of a trial the court would have to reconsider the issue of class certification. Id at 19. Because a risk of decertification has been acknowledged by both parties, this factor slightly favors settlement.

The precise terms of offer also favor settlement. While the court noted its hesitation regarding the purported benefits to

5

the class in its order of October 15, Doc #100, this concern evidently was not shared by the members of the class, none of whom objected to the settlement offer.  Despite its earlier hesitation, the court finds that the terms of settlement do in fact provide benefits to the class.  Specifically, former distributors may opt for a $250 cash settlement, which by definition is beneficial.  As to current distributors, the court finds the marketing seminars, which are designed, in part, to provide examples of business models and practices that distributors have used to increase their sales and profitability, will afford distributors valuable business training and advice.  The skills acquired during the seminars will then in turn enable distributors to utilize more efficient business practices and methods.  Upon further reflection, therefore, the court finds the settlement to be beneficial to the class.

The extent of discovery completed and the stage of the proceedings, factor number five, also supports settlement.  The parties have engaged in several years of litigation, including depositions, substantial research, an interlocutory appeal and several motions.  By the time the settlement was reached, therefore, the litigation had proceeded to a point at which both plaintiffs and defendants "ha[d] a clear view of the strengths and weaknesses of their cases."  In re Warner Communications Sec Litig, 618 F Supp 735, 745 (SDNY 1985) aff'd 798 F2d 35 (2d Cir 1986).  Because the true value of the class' claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case, the fifth factor favors settlement.

//

1 The views of counsel support settlement as well.  While
2 some courts have indicated that such views are entitled to
3 deference, see, for example, <u>Williams v Vukovich</u>, 720 F2d 909,
4 922-23 (6th Cir 1983), this court is reluctant to put much stock in
5 counsel's pronouncements, as parties to class actions and their
6 counsel often have pecuniary interests in seeing the settlement
7 approved.  Here, the parties move jointly for final approval of the
8 settlement.  While the court is disinclined to give this factor
9 much weight, the favorable views of counsel do support settlement.

10 The reaction of class members to the proposed
11 settlement, or perhaps more accurately the absence of a negative
12 reaction, strongly supports settlement.  A total of zero objections
13 and sixteen opt-outs (comprising 4.86% of the class) were made from
14 the class of roughly three hundred and twenty-nine (329) members.
15 The Ninth Circuit has approved settlements over objections if the
16 settlement otherwise meets the fairness requirements.  See, e g,
17 <u>Churchill Village</u>, 361 F3d at 577 (500 opt-outs and 45 objections
18 out of approximately 90,000 notified class members); <u>In re Mego</u>
19 <u>Financial Sec Litig</u>, 213 F3d 454, 459 (9th Cir 2000) (one objection
20 out of a potential class of 5400).  Accordingly, the overwhelming
21 positive reaction of the class members supports settlement.

22 Lastly, the procedure by which the settlement was arrived
23 further supports settlement.  The arms-length negotiations,
24 including a day-long mediation before Judge Lynch, indicate that
25 the settlement was reached in a procedurally sound manner.  Doc
26 #176 at 4.  Additionally, there is nothing in the record indicating
27 collusion or bad faith by the parties.
28 //

**7**

After considering the above factors and the lodestar figure discussed below, the court finds the settlement to be fair, reasonable and adequate to the class within the meaning of FRCP 23(e)(1)(C). The court, therefore, GRANTS the parties' motion for final approval of the settlement.

### III

The court has the authority and duty to determine the fairness of attorney fees in a class action settlement. <u>Zucker v Occidental Petroleum Corp</u>, 192 F3d 1323, 1328-29 (9th Cir 1999). Class counsel seek an award of attorney fees in the amount of $255,000, plus litigation costs of $34,156.07. Doc #106 at 5.

Class counsel have submitted data on their own stated hourly rates and have calculated the lodestar figure using the <u>Laffey</u> matrix.[2] Id at 11-12 (reenlisting a 2008 class action fee analysis); Doc #107, Exh B; see also <u>Laffey v Northwest Airlines, Inc</u>, 572 F Supp 354 (DDC 1983), rev'd on other grounds, 746 F2d 4 (DC Cir 1984), cert denied, 472 US 1021 (1985), as modified by <u>Save Our Cumberland Mountains, Inc v Hodel</u>, 857 F2d 1516 (DC Cir 1988).

While class counsel's submissions are helpful, the court recalculates the lodestar figure as follows. Under the 2009-2010 <u>Laffey</u> matrix,[3] attorneys bill at the following rates according to experience:

---

[2] The Laffey Matrix is "a schedule of charges based on years of experience." <u>Covington v District of Columbia</u>, 57 F3d 1101, 1105 (DC Cir 1995) (citation omitted).

[3] See United States Attorney's Office for the District of Columbia's website (available at: http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html) (last visited June 6, 2010).

| Experience | Rate Per Hour |
|---|---|
| 20+ Years | $465 |
| 11-19 Years | $410 |
| 8-10 Years | $330 |
| 4-7 Years | $270 |
| 1-3 Years | $225 |
| Paralegals & Law Clerks | $130 |

Class counsel further recognize that these figures are tailored for the District of Columbia and cost of living data differ for San Francisco and Los Angeles (the cities in which class counsel operate). Class counsel have adjusted the hourly rates based on the federal locality pay differentials as indicated on federally compiled cost of living data. See Doc #107, Exh B.

Applying the adjustments for San Francisco (107.4%) and Los Angeles (102.77%), the court obtains the following rates[4]:

| Experience | San Francisco Hourly Rate | Los Angeles Hourly Rate |
|---|---|---|
| 20+ Years | $499.41 | $477.88 |
| 11-19 Years | $440.34 | $421.36 |
| 8-10 Years | $354.42 | $339.14 |
| 4-7 Years | $289.98 | $277.48 |
| 1-3 Years | $241.65 | $231.23 |
| Paralegals & Law Clerks | $139.62 | $133.60 |

The following table reflects the court's adjusted lodestar calculations for attorneys and legal assistants working on the case. See Doc #106.

---

[4]Hourly Mean Wage for Attorneys, (May 2008): Los Angeles, $71.66; San Francisco, $74.89; Washington, $69.73 (available at http://bls.gov) (last visited March 9, 2010). Using these figures, the court calculates the San Francisco and Los Angeles adjustments to be 107.4% and 102.77%, respectively.

| Attorney/<br>Legal Assistant | Office | Experience | 2009-10 Laffey Rate | Total Hours | Total Lodestar |
|---|---|---|---|---|---|
| Jeffrey Compton | LA | 21 | $477.88 | 2.2 | $1051.34 |
| Kevin Eng | SF | 10 | $354.42 | 903.1 | $320,076.70 |
| Legal Assistant | SF | n/a | $139.62 | 21 | $2,932.02 |
| Edward Zusman | SF | 19 | $440.34 | 193 | $84,985.62 |
| Legal Assistant | LA | n/a | $133.60 | .5 | $66.80 |
| David Markun | LA | 27 | $477.88 | 46.7 | $22,316.97 |
| | | | Totals | 1166.5 | $431,429.45 |

First, it appears that, given the length of proceedings, as well as the motions filed and discovery conducted, it is reasonable that the attorneys in this case have spent almost 1,200 hours working on this matter.

The court now turns to the lodestar cross-check, which entails evaluation of the multiplier implied by counsel's requested fee ($255,000) and counsel's lodestar fee (computed above as $431,429.45). The lodestar calculation under the Laffey methodology results in a multiplier of 0.59 (255000/431429.45 = .59).

This resulting multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel. Assuming that the Laffey numbers capture class counsel's opportunity costs, see Laffey, 746 F2d at 24, a negotiated fee that works out to a negative multiplier quantifies the amalgam of circumstances the court would otherwise have difficulty evaluating. While it is certainly true that

10

because the negative multiplier reflects a negotiated result that, like any bargain, represents a number of interests, calculations and risk analyses that provide a glimpse into the parties' collective views of the settlement at this precise snapshot in time, class counsel's willingness to negotiate a fee award reflecting a negative multiplier signals to the court that, in counsel's view, plaintiffs' case is weak and/or fraught with risk.

Again assuming that the adjusted Laffey rates more or less accurately reflect class counsel's opportunity costs (i e, what they could earn in other engagements), a negative multiplier evinces that undertaking this litigation was not a wise use of class counsel's time and resources.  No matter class counsel's expectations at the beginning of this case, at the current juncture, by agreeing to a negotiated fee that is but a fraction of prevailing market rates, counsel tacitly confirm that plaintiffs' case is not what they thought it once was.  The lodestar seems to capture numerically this momentary conception of risk and expected outcome; class counsel are willing to accept a fee less than what counsel could have earned in other pursuits.  The negative lodestar thus reinforces the court's findings as to the first and second class action factors discussed in Part II, above; counsel are willing to earn less than they would in a normal case in order to get the class some benefit in a litigation which they see as challenging.  To be sure, accuracy of the lodestar multiplier as an index of the strength of the plaintiffs' case (and hence the value of the services rendered by counsel in bringing and prosecuting the litigation) hinges on Laffey rates accurately capturing counsel's opportunity costs.  A further refinement of this analysis would

11

require class counsel to substantiate their opportunity costs by demonstrating income likely foregone by work on the litigation under scrutiny.  Obviously, that requires more than a simple averment of counsel's "regular" hourly fees.  The court has not demanded this here in the interest of bringing this litigation to a close, but a more searching inquiry may be necessary in future applications of this analysis.

Having performed a lodestar cross-check, the requested fee award looks reasonable, indeed on the low side.  Because the lodestar cross-check revealed a multiplier of 0.59, the court is satisfied that counsel's requested fee award is not unreasonable.

IV

Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class as well as to compensate named plaintiffs for their reasonable fear of workplace retaliation.  See Staton v Boeing Co, 327 F3d 938, 977 (9th Cir 2003).  The court must ensure that the incentive awards are not the result of fraud or collusion.  Id at 975.

Here, class counsel represents that class representatives Chun-Hoon and Guglielmino have made "significant contribution[s] to the prosecution of this matter." Doc #106 at 12.  These efforts included reviewing court documents, providing thousands of pages of personal and business records for review by McKee and participation in early-neutral evaluation and mediation.  Id.

The amount of each plaintiff's incentive award, $5,000, appears reasonable in light of the work performed by each plaintiff and the risk each faced.  Nothing in the record indicates fraud or

1  collusion.  Because the incentive awards appear fair, the court
2  approves them.

### V

For the above reasons, and for those stated in its October 15 order, Doc #100, the court GRANTS the parties' joint motion for final approval of class action settlement.  Doc #103.  The court also GRANTS plaintiffs' motion for attorney fees, costs and class representative incentive payments.  Doc #106.

IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge

**United States District Court**
For the Northern District of California

13